IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| In re: | ) | |
|---|---|---|
| | ) | |
| COX ENTERPRISES, INC. SET-TOP | ) | 12-MDL-2048-C |
| CABLE TELEVISION BOX | ) | |
| ANTITRUST LITIGATION | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant has filed a motion in limine to exclude the testimony of Dr. Justine S. Hastings, arguing it fails the standards set forth by <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993), and Fed. R. Evid. 702. Defendant argues that while Dr. Hastings' education and skills are adequate, the opinion she has offered in this case should be excluded, as she has failed to utilize reliable methods or reliably apply those methods to the facts in rendering her opinion. Defendant asserts that pursuant to the Supreme Court's opinion in <u>Comcast Corp. v. Behrend</u>, ___ U.S. ___, 133 S.Ct. 1426, 1436-41 (2013), the Court must rule on this <u>Daubert</u> challenge prior to making a ruling on class certification.

### Injury and Damages

In attacking Dr. Hastings' opinion, Defendant raises a number of challenges to various parts of the expert report. First, Defendant argues that Dr. Hastings' testimony on injury and damages is unreliable because it is based upon flawed data and ignores contradictory evidence. According to Defendant, Dr. Hastings used as the basis for her damages assessment internal Cox documents[1] which are flawed in several respects. Defendant argues

---

[1] The parties refer to these documents collectively as the "HD Receiver Spreadsheet." See Dkt. No. 65.

the documents improperly assign the life span for a set-top box ("STB"), improperly determine the wholesale value for the STB, and improperly rely on an HD receiver spreadsheet. According to Defendant, the internal documents were not fully vetted by Cox's executives and reflected simply an off-the-cuff analysis by unqualified employees. Defendant notes that these documents have been challenged through deposition testimony and by a declaration on behalf of Cox.

After consideration of the evidence, the Court finds Defendant's argument does not warrant exclusion of Dr. Hastings' testimony. As for Defendant's arguments that the internal documents improperly reflect the life span of an STB, there is ample evidence in the record presented by the parties to support the seven-year life span. While certainly there is evidence to the contrary, it cannot be said that Dr. Hastings' reliance on a seven-year life span renders her opinion unreliable. As for the challenges to the other assumptions raised in the internal documents, the Court notes that Cox's disagreement with those documents has increased as litigation has continued. When Cox's representative initially responded to the internal documents, he noted some questions and suggested some additional information may be relevant to a full understanding of the conclusions reached. Indeed, the representative's initial position fell far short of his current adamant disavowals and assertions that the documents were wholly incorrect. Given this changing position, it cannot be said that Dr. Hastings' reliance on these documents renders her opinion unreliable. It may be that ultimately the jury determines that reliance was improper and discounts her opinion; however, it is as likely that the jury would find Cox's attempts to distance itself from the

assertions in the memo are more litigation strategy than business reality. In that instance, of course, Dr. Hastings' reliance on the internal documents would not be misplaced or unreliable.

In short, the Court finds that rather than render the opinion unreliable, Defendant's arguments regarding Dr. Hastings' reliance on the internal documents are issues for cross-examination and go to the weight to be given to that portion of her opinion.

Canada v. Oklahoma

Defendant next challenges Dr. Hastings' consideration of Canadian retail prices for STBs, noting that that opinion should be excluded, as Dr. Hastings ignores differences between Oklahoma City and Canada. In raising this argument, Defendant notes several problems with Dr. Hastings' consideration of Canadian retail sales of STBs. Defendant argues that Dr. Hastings' opinion does not account for regulatory differences between the market in Canada and that in Oklahoma City; nor does it account for subsidies that may be provided to purchasers of STBs by cable providers, noting that those subsidies are prohibited under the law applicable in Oklahoma but not in Canada. Finally, Defendant argues that Dr. Hastings fails to account for the fact that Canada's largest cable provider also provides wireless telephone service, as well as multiple other options, and that that ability allows it to bundle products together, discounting them in a manner not available in Oklahoma, and that those discount prices would necessarily alter the price of available STBs in a retail market.

The flaw in Defendant's arguments is that Dr. Hastings' opinion also relies upon the retail price of STBs at Best Buy, a retail outlet. As Dr. Hastings notes,[2] there is no evidence to suggest that the cable providers provide subsidies or otherwise influence the price at which Best Buy markets its STBs. Rather, Dr. Hastings' report clearly notes considerations of regulatory conduct are important, but that those regulations apply primarily to multichannel video programming distributors ("MVPD") services and are not relevant to STB pricing. Indeed, the evidence before the Court makes clear that Dr. Hastings has accounted for the various distinctions that exist between the Oklahoma market and the Canadian market, and has made the proper adjustments in her analysis to apply only those considerations that affect the STB market rather than the MVPD market. To the extent that Defendant believes that additional factors would affect those prices that are not explained or addressed by Dr. Hastings, those issues are questions going to the weight to be given to Dr. Hastings' opinions, rather than their reliability or admissibility.

## Damages Model

Defendant argues that Dr. Hastings' damages model is not reliable because it fails to account for the many instances where the allegedly tied product, that is, the STB, actually saves proposed class members money. According to Defendant, when renting an STB, there

---

[2] Attached to Plaintiff's Response is a declaration from Dr. Hastings. Defendant seeks to strike this declaration calling it a third expert report. Review of the declaration establishes that it is not a report as no new opinions are offered. Rather, the declaration addresses issues raised by Defendant and clarifies Dr. Hasting's opinion. Therefore, the declaration is properly classified as a permissible rebuttal report. See 103 Investors I, L.P. v. Square D Co., 372 F.3d 1213, 1218 (10th Cir. 2004).

are instances where a customer actually paid less for that rental than the amount Dr. Hastings calculated as the competitive rate for those months. Dr. Hastings, rather than using this negative value or savings, adjusted those numbers to zero. In this regard, Defendant argues that Dr. Hastings improperly inflated her damages estimate. In response, Plaintiff argues that the adjustment was necessary, as otherwise a firm engaging in illegal antitrust activity could periodically adjust its rates and keep its damages to a negligible amount, yet still engage in improper conduct. Plaintiff also notes he has revised the class definition to include only those subscribers who paid less than the listed monthly rental rate for STBs.

In light of Plaintiff's proposed change to the class definition, Defendant's arguments on this point are moot.

## HD DVR Services and HD Television

Defendant next challenges Dr. Hastings' consideration of rental rates and costs for HD DVR services and HD television. According to Defendant, by including these charges, Dr. Hastings has abandoned Plaintiff's claim that two-way programming services are the services relevant to the tie and that HD and DVR functionality of STBs are not implicated in the tie. Defendant also argues that this opinion has ignored the Court's earlier definition of the tied product, which is the basic STB that allows a customer access to Cox's Interactive Programming Guide ("IPG") and Video On Demand ("VOD"), regardless of the additional features of the STB, such as HD and/or DVR features. In forming its argument, Defendant relies heavily on issues raised, evidence presented, and arguments made in the nationwide Multi-District Litigation and the arguments for class certification in that matter.

Plaintiff notes neither he nor Dr. Hastings are bound by opinions tendered by Professor Singer in the nationwide MDL class. That class was not certified and the issues presented in that case may certainly differ from those raised in the present case. According to Plaintiff, the question in this case is whether Cox improperly tied a requirement to rent an STB, of any type, to the opportunity or the ability of a customer to receive MVPD services. Plaintiff argues that whether the box was a typical standard definition STB or an HD DVR, the question remains the same: Was a rental required in order to obtain the service?

After consideration, the Court finds Plaintiff's position well supported. While the nationwide Plaintiffs may have posited a different anti-trust claim, or raised arguments of differing tied or tying products, nothing forces Plaintiff here to adhere to those arguments.

Defendant's arguments regarding the inclusion of the DVR service fees likewise fail. The literature from Cox clearly indicates that if the customer wishes to subscribe to DVR service, the fee is required. Thus, that fee may well be considered part and parcel of the rental fee for the HD DVR STB and clearly fits within the scope of Plaintiff's antitrust claims.

## Market Power

Defendant next challenges Dr. Hastings' opinion on market power. In determining market power, the Plaintiff is required to define the relevant product and geographic markets. Defendant argues that Plaintiff's reliance on Dr. Hastings in accomplishing this task is misplaced, as her market power analysis is fundamentally flawed. Dr. Hastings has defined the relevant product market as premium cable. Defendant argues this opinion should be

excluded, as Dr. Hastings fails to apply her chosen methodology, that is, the horizontal merger guidelines ("HMG"). Second, she cites to but fails to consider the "practical indicia" identified in Brown Shoe Co., Inc. v. United States, 370 U.S. 294, 325 (1962). Third, Dr. Hastings provides no analysis of consumer preferences or the cross-elasticity of demand.

According to Defendant, Dr. Hastings claims to rely upon the HMG, but does not actually apply those. In this regard, Defendant points to Dr. Hastings' testimony wherein she could not outline the elements of the HMG or otherwise explain them in detail. In response, Dr. Hastings agrees that she did not perform a typical HMG or Small but Significant and Non-transitory Increase in Price ("SSNIP") test primarily based upon Cox's failure to produce the data necessary for proper application. Nevertheless, Dr. Hastings has opined that she could accurately identify the product market based on other evidence presented by Cox. Indeed, after consideration of Dr. Hastings' expert opinion, the Court finds that the product market has been properly defined and Dr. Hastings opinions on that issue are supported by reasonable evidence.

<u>Single Indicia</u>

Defendant next argues that Dr. Hastings considered only a single practical indicia from <u>Brown Shoe</u>. However, as Dr. Hastings notes, Defendant's own brief refutes this position as it discusses her analysis of two indicia from <u>Brown Shoe</u>; that is, industry recognition and a sensitivity to price changes.

7

Cross-Elasticity of Demand

Defendant next challenges Dr. Hastings' opinions regarding the cross-elasticity of demand question, arguing that Dr. Hastings failed to consider several questions, such as what kind of cable service a particular subscriber purchases, what kind of set-top box or boxes a subscriber chooses to rent, for what time period such service or box has been available to the subscriber, and, given all that data, the range of substitutes available for a subscriber of VOD, electronic programming guides, and set-top boxes, and finally, the likelihood that the consumer would choose a particular set of alternatives if Cox were to raise the price of either or both of the alleged tying and tied products. Defendant then goes on to list a number of specific programming packages that are available and asserts that Dr. Hastings failed to properly consider for which of each particular programming package a customer may find other substitutes outside of provision of Cox services.

The Court finds Defendant's arguments an attempt to inject unnecessary specificity into the process. The question, as identified throughout this case, is whether or not a Cox customer is required to rent an STB in order to obtain premium cable services. Which specific premium cable service the customer wishes to obtain is not relevant to the question. The question is whether other substitutes exist that would allow the customer to avoid obtaining premium cable services from Cox, not whether a customer could get movies from a source other than a subscription to Defendant's HBO service. Dr. Hastings has adequately considered the other potential substitutes and offered explanations and analyses for why each either fits within a consideration as a potential substitute or does not.

## Geographic Market

Next, Defendant challenges Dr. Hastings' definition of the appropriate geographic market. According to Defendant, considering Oklahoma City as a single geographic market is unreliable, as it ignores differences of economics and competition within the market. As Dr. Hastings notes in her report, and Plaintiff notes in his response brief, the geographic market used by Dr. Hastings corresponds with Defendant's marketing plans and its own assessment of how the geographic area of Oklahoma City and its locality should be combined. The Court finds no flaw in Dr. Hastings' reliance on this geographic market sufficient to warrant exclusion of her opinion.

## Possession of Market Power

Defendant also attacks Dr. Hastings' report, arguing that she establishes Defendant's possession of market power based solely on the fact that it faces a downward-sloping demand curve. Defendant's argument overly simplifies Dr. Hastings' opinions. A careful reading reflects that she does not base her opinion on possession of market power based solely on the existence of a downward-sloping demand curve; rather, Dr. Hastings notes that feature is one of the indicia of Defendant's market power. Indeed, as Dr. Hastings notes in her rebuttal report, her testimony was that if you have market power, then you have a downward-sloping demand curve.

Defendant's challenge argues that Dr. Hastings bases the existence of market power solely on using the Herfindahl-Hirschman Index ("HHI") as proof of market power. However, Dr. Hastings does not rely solely on her HHI calculations to establish proof of

9

Defendant's market power; rather, that is but one factor included in a number of others which lead her to conclude that Defendant possesses sufficient market power.

## Coercion

Next Defendant challenges Dr. Hastings' testimony on coercion. According to Defendant, Dr. Hastings' opinion that Defendant engaged in coercion is not reliable because it is not based upon an economic analysis or theory. Rather, according to Defendant, Dr. Hastings relied only on Cox documents and the Court's prior ruling for determining that coercion existed. The extent and limits upon Dr. Hastings' ability to testify on the legal element of coercion are not issues going to the reliability or validity of her opinion, and therefore not subject to <u>Daubert</u> analysis. Rather, the question is whether coercion is an element that must be proven by the parties and found by the trier of fact. If that is the case, then it is not Dr. Hastings' position or obligation to offer expert testimony.

## Conclusion

For the reasons set forth herein, Defendant Cox Communications, Inc.'s Motion in Limine to Exclude Testimony of Dr. Justine S. Hastings (Dkt. No. 61) is DENIED.

IT IS SO ORDERED this 9th day of January, 2014.

_____
ROBIN J. CAUTHRON
United States District Judge