IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | |
| COX ENTERPRISES, INC. SET-TOP ) | 12-MDL-2048-C |
| CABLE TELEVISION BOX ) | |
| ANTITRUST LITIGATION ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff filed the present suit against Defendant Cox Enterprises, Inc. ("Cox"), alleging that Defendant illegally forces customers to rent a Cox set-top box ("STB") in order to gain full access to Cox's premium cable services in violation of the Sherman Act, 15 U.S.C. § 1. Plaintiff's action was one of many filed by Cox premium cable subscribers in various jurisdictions against Cox. At Defendant's request, the United States Judicial Panel on Multidistrict Litigation consolidated these actions and transferred them to this Court for resolution. The case has proceeded through discovery and on January 9, 2014, the Court certified the class. Defendant has filed a Motion for Summary Judgment raising a number of arguments which it asserts entitle it to judgment on each of Plaintiff's claims. After consideration of the arguments raised by Defendant and the evidentiary materials appended to the parties' briefs, the Court finds that Defendant is not entitled to summary judgment, as there are questions of material fact in dispute.

**STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted

only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

Defendant's first argument is that it is entitled to judgment because Plaintiff cannot demonstrate the existence of any anti-competitive effect based on the alleged tie. According to Defendant, in order to prevail, Plaintiff must show either that (a) there were in fact other

willing sellers of set-top boxes in Oklahoma City during the class period, such as Best Buy or Wal-Mart, whose attempted sales of set-top boxes to Cox customers were prevented by Cox policies, or (b) that Oklahoma City residents were unable to purchase a package containing "premium cable" and a set-top box from another seller, such as AT&T, DirectTV, or Dish Network.

In this argument, Defendant improperly narrows the scope of the anti-competitive conduct argued by Plaintiff. Plaintiff's arguments center around the fact that because Defendant illegally tied purchase of premium cable to rental of a set-top box, no other competitor could market a set-top box. The facts presented by Plaintiff demonstrate that Defendant's conduct of requiring a consumer to rent a box from it in order to obtain the premium cable services precluded entry of any other competitor in the marketplace because Defendant's conduct eliminated the existence of any market. Thus, if Plaintiff's evidence is believed by the jury, he would have demonstrated that the alleged tie "foreclosed competition on the merits in a product market distinct from the market for the tying item." Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 21 (1984) (overruled on other grounds by Illinois Tool Works, Inc. v. Independent Ink., Inc., 547 U.S. 28 (2006)). As the Tenth Circuit stated in Fox Motors, Inc. v. Mazda Distribs. (Gulf), Inc., 806 F.2d 953, 957 (10th Cir. 1986): "Power in one market may not be employed to impair competition on the merits with existing or potential rivals in another market, nor may purchasers be denied the freedom to select the best buy in the latter market."

The evidence presented by Plaintiff, if accepted by the jury, would demonstrate that through its tying arrangements Defendant has impaired or, in effect, barred any competition in the set-top box market. The Tenth Circuit set out three elements which, if established by a plaintiff, would create a likelihood of exploitation: "First, purchases of the tying product must be conditioned upon purchases of a distinct tied product." "Second, a seller must possess sufficient power in the tying market to compel acceptance of the tied product." And third, "a tying arrangement must foreclose to competitors of the tied product a 'not insubstantial' volume of commerce." Id. at 957.

The evidence presented by Plaintiff establishes that access to Defendant's premium cable is conditioned upon rental of a set-top box. Second, as the Court found in the class certification phase, Plaintiff has offered evidence from which a reasonable jury could determine that Defendant had sufficient market power to compel acceptance of the tied product. And finally, the evidence presented by Plaintiff demonstrates Defendant's actions affect a substantial volume of commerce. Thus, Plaintiff has offered evidence from which a reasonable jury could find that a likelihood of exploitation exists. "Fulfillment of these conditions establishes a presumption of an unlawful restraint of trade and generally warrants per se condemnation under the antitrust laws." Id. at 957.

Defendant next argues that there can be no illegal tie if no one else sold the tied product by itself. That is, according to Defendant, because no one else offered two-way set-top boxes then there was no competing sales that could have been foreclosed. Again, Defendant attempts to improperly narrow the scope of consideration. The evidence presented

by Plaintiff would support a jury's determination that it was Cox's improper tying arrangement and anti-competitive conduct that precluded entry of any competitor into the marketplace. Indeed, as the Supreme Court stated in Jefferson Parish, "the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." 466 U.S. at 12. Contrary to Defendant's arguments, the fact that there are no competitors in the marketplace does not foreclose the finding that it engaged in anti-competitive behavior, but rather suggests that its ability to foreclose the market was significant enough to be responsible for the lack of competition.

Defendant argues that, because class members could rent a set-top box from a competing provider, such as AT&T, DirectTV, or Dish Network, and thus there were alternative choices, a finding of foreclosure of competition is precluded. Again, this is a distortion of the applicable standards. The focus is on whether or not a class member could purchase premium cable from Defendant and a set-top box from an outside party. The impact of the other competitors, such as AT&T, DirectTV, and Dish Network, focuses more on Defendant's market power than whether or not alternative products are available.

Finally, to the extent Defendant argues that it worked with set-top box manufacturers to develop a product or to set standards for third-party manufacturers, Plaintiff has offered evidence countering these arguments and, at a minimum, there is a factual dispute. As the Court noted in its class certification Order, Cox has clearly stated within its materials that

rental of a set-top box from it is a required step in obtaining premium cable services. Consequently, Defendant's arguments to the contrary demonstrate only the existence of a material factual dispute. Thus, Defendant's arguments that Plaintiff has failed to demonstrate tying must fail.

The Court notes that Defendant has again attempted to inject its retail sales of set-top boxes in the 2002-2004 time frame. The Court has previously excluded this evidence based on Defendant's discovery violations and the lack of relevance given the amount and timing of the sales. Nothing now raised by Defendant provides a basis to alter that determination. If it was not sufficiently clear in the Court's earlier Order, the Court will make it clear now: Defendant is prohibited from offering any evidence related to the retail sale of set-top boxes, either at trial or for any other purpose in this litigation. (See October 15, 2013, Order, Dkt. No. 85; November 5, 2013, Order, Dkt. No. 115).

Defendant again argues that it is entitled to summary judgment on any claim arising from or related to payment of a DVR service fee. Again, this Court has addressed this argument and found it without merit. Defendant offers no additional evidence or argument warranting a change in position. (See January 9, 2014, Order, Dkt. No. 125)

Cox argues that it does not have sufficient power in the tying market to enable it to restrain trade in the tied product market. In resolving the class certification issue, the Court extensively examined the applicable law and the facts surrounding this issue. After that analysis, the Court determined that Plaintiff had offered evidence demonstrating Defendant has market power. (See January 9, 2014, Order, Dkt. No. 123). In the present Motion,

Defendant offers no evidence or argument which was not previously considered. Accordingly, the Court's previous resolution of the market power issue need not be addressed further. Defendant's Motion for Summary Judgment will be denied on its argument of market power.

Finally, Defendant argues that it is entitled to judgment related to all claims arising from the payment of regulated set-top box rental rates. Plaintiff argues that the doctrine should not apply and relies on the Second Circuit case of Litton Systems, Inc. v. American Telephone and Telegraph Co., 700 F.2d 785 (2d Cir. 1983). After consideration of the parties' arguments, the Court finds Defendant's position well supported. Plaintiff's reliance on Litton does not alter that determination. As Defendant notes, the filed rate doctrine is far-reaching. Indeed, it has been described as rigid and unforgiving. See Simon v. KeySpan Corp., 694 F.3d 196 (2d Cir. 2012). The doctrine originated within the context of the Interstate Commerce Act and the Supreme Court's decision in Keogh v. Chicago & NW Ry. Co., 260 U.S. 156 (1922). In that case, the Supreme Court determined that regardless of the fact that the rates had been established by collusion rather than competition, once they were filed and approved by the ICC they were no longer subject to attack under either federal or state antitrust laws. Id. at 160-65. The same reasoning applies here. While Defendant may have been able to establish a higher rate in its filing because it improperly suppressed competition, once that rate is filed with and approved by the appropriate regulatory agency, it is unassailable in this action. While Plaintiff has not directly challenged the rate as improper, his reliance on those rates as establishing the damages claim is a sufficient

challenge to the filed and approved rates to trigger application of the doctrine. Consequently, to the extent Defendant can establish that the rates charged to certain customers for their set-top boxes were governed by a filed rate, Plaintiff may not include those customers within the scope of its class or within its claims for damages.

## **CONCLUSION**

For the reasons set forth herein, Defendant's Motion for Summary Judgment (Dkt. No. 143) is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED this 3rd day of July, 2014.

*/s/ Robin J. Cauthron*
ROBIN J. CAUTHRON
United States District Judge