IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| COX ENTERPRISES, INC. SET-TOP | ) | 12-MDL-2048-C |
| CABLE TELEVISION BOX | ) | |
| ANTITRUST LITIGATION | ) | |

MEMORANDUM OPINION AND ORDER

In 2009, multiple Cox premium cable subscribers filed class action suits in various jurisdictions against Cox for allegedly illegally tying its premium cable service to rental of a Cox set-top box. At Defendant's request, the United States Judicial Panel on Multidistrict Litigation ("JPML") consolidated these actions and transferred them to this Court for resolution. On December 28, 2011, the Court determined that the action could not proceed as a nationwide class. Beginning in 2012, counsel who had pursued the nationwide class refiled virtually identical actions across the country. Rather than seeking a nationwide class, each newly-filed action sought to certify a class for a specific geographic region. The actions were again consolidated by the JPML and transferred to this Court. Since consolidation, the Court has read literally thousands of pages of briefs, conducted several hearings, including a class certification hearing, and issued dozens of Orders, including rulings on Motions to Dismiss, <u>Daubert</u> Motions, Class Certification, and recently a Motion for Summary Judgment. In this time period the parties have exchanged untold numbers of documents in discovery, conducted dozens of depositions and had a multitude of telephone, e-mail and face-to-face conferences. Now, some five years after this case began, Defendant, on April

3, 2014, asserted for the first time that the claims of certain members of the class were governed by an arbitration agreement.

According to Defendant, a number of its customers have entered a program called "Price Lock Guarantee," requiring assent to a contract which contains an arbitration clause. Defendant asserts that since November of 2009, customers who have entered the Price Lock program have agreed to waive their right to participate in a class action and instead arbitrate any claims against Defendant. Defendant asserts that at least 40,000 class members (approximately 25% of the class) have entered into this arbitration agreement. In addition, Defendant asserts that beginning in November of 2011, the terms and conditions of its Subscriber Agreement for high-speed Internet access included an arbitration agreement. Defendant asserts that as many as 142,000 class members (approximately 87% of the class) are subject to this arbitration agreement. Defendant requests the Court dismiss these class members and send them to arbitration.

Plaintiffs argue that Defendant's Motion should be denied for three reasons: first, the Motion is untimely; second, given the dates mentioned by Defendant of when the agreements were put in place, it appears Defendant contacted potential class members in an attempt to have them alter their status in this litigation; and third, Defendant has failed to comply with its Fed. R. Civ. P. 26 obligations. Plaintiffs also argue that the arbitration clauses do not require arbitration of the claims brought in this action. The Court finds the first argument to be dispositive.

Without question arbitration is favored. The Supreme Court has held the Federal Arbitration Act is a "congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). While courts routinely recognize that arbitration agreements are to be enforced, the rule is not without exception. 9 U.S.C. § 2 provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The Tenth Circuit has recognized that waiver by conduct in litigation is grounds to deny enforcement. See Reid Burton Constr. Inc. v. Carpenters Dist. Council of S. Colo., 535 F.2d 598, 604 (10th Cir. 1976) ("It is entirely appropriate in some instances for a district court to retain . . . jurisdiction of an arbitrable dispute where, because of conduct before the court, it may be deemed that a party is prevented on the basis of some equitable principle from asserting a right to arbitration."). Later, in Peterson v. Shearson/American Express, Inc., 849 F.2d 464 (10th Cir. 1988), the Circuit identified six factors to consider in evaluating waiver. Those factors are:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

Id. at 467-68, citing Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo., 614 F.2d 698, 702 (10th Cir. 1980). These six factors are not a balancing test, nor are they exclusive. "Rather, these factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration." Hill v. Ricoh Ams. Corp., 603 F.3d 766, 773 (10th Cir. 2010). Nevertheless, the Tenth Circuit has recognized that three of the factors – "(2) substantial progress in the litigation, (3) an imminent trial, and (5) substantial use of discovery procedures – can be significant in deciding whether the court should find waiver because of the inefficiencies that would result from ordering arbitration." Id. at 774.

In considering the status of this case, the Court finds these three factors are strongly against Defendant's request. As noted above, this case has a lengthy history. It has been litigated zealously by all parties. As to the third of the three significant factors, the parties have made ample use of every discovery device available and Defendant's actions in this regard are incompatible with the use of arbitration, where discovery is more limited.

As to the first of the three factors, Defendant's actions in litigating the class certification issues also suggest an attempt to manipulate the process, or at least to attempt multiple bites at the apple. Defendant has sought outright dismissal of the case, and attacked the class certification process from every conceivable angle, including seeking a permissive appeal challenging the certification. Defendant also sought summary judgment attacking the

ability of the class to prevail.* Had Defendant been successful on any of these tactics, it can be assumed that it would have attempted to rely on that success to bar any request for arbitration. Now, after nothing is left but trial, Defendant argues it should be allowed to avoid that trial and instead arbitrate the claims of any Plaintiff willing to persevere. Clearly, Defendant has attempted to play "heads I win, tails you lose." The Tenth Circuit favorably recognized the Eighth Circuit's rejection of such a strategy. See Hill, 603 F.3d 774, quoting Hooper v. Advance America, Cash Advance Ctrs. of Mo., Inc., 589 F.3d 917, 922 (8th Cir. 2009).

As for the second factor, trial is imminent. Defendant filed this Motion a mere five months prior to trial. As noted, this case has been litigated in some form for five years. Were the Court to order arbitration for up to 87% of the class, all the time, effort, and expense of the parties and the Court would have been wasted. To argue for arbitration at this stage is without question inefficient. Indeed, Defendant's delay runs afoul of the Supreme Court's holding that "[a] prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" Preston v. Ferrer, 552 U.S. 346, 357 (2008) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 633 (1985)).

---

* The Court recognizes that the summary judgment motion was filed at the same time as the motion to compel arbitration. Nonetheless, the substance of the summary judgment motion made clear that it was an attempt to dispose of the case in its entirety.

5

Defendant argues that it could not have raised the issue any earlier because, until the class was certified, the issue was not ripe. Defendant cites a number of cases in support of this position but the Court finds them inapposite. In each instance, the question of arbitration was raised as part of the class certification process and thereby much earlier than it was raised here. While there was some discussion regarding whether any party could be compelled to arbitration before being named a class member, it was clear in each case that the defendant was raising the issue early in the case. It is this distinction that is critical. Whether or not the Court could have compelled a non-class member to arbitrate, failure to raise the issue can result in waiver. It is Defendant's inconsistent conduct and extreme delay that warrants waiver in this case.

Defendant's attempt to explain it waited to raise arbitration is further undermined in light of its handling of another issue that impacted persons not yet members of the class. In objecting to the Motion for Class Certification, Defendant argued that certain potential class members would be subject to the "filed rate doctrine." In its argument it was clear that Defendant recognized the doctrine could apply to bar certain potential class members' claims. Defendant then relied on the doctrine as a reason to deny certification of the class. Certainly, had Defendant intended to be prompt in its demand for arbitration it could have made a similar argument.

As noted above, Defendant argues that as much as 87% of the class is subject to arbitration. Without question this fact would have a significant impact on the issue of numerosity when evaluating the propriety of certifying a class. Nevertheless, the issue is

notably absent from either of Defendant's objections to the class certification motions. See Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 725 n.5 (11th Cir. 1987) (noting that the presence of arbitration agreements is relevant to the numerosity requirement of Rule 23(a)(2) and directing the district court to determine whether the potential class members not subject to arbitration would be sufficient to satisfy the numerosity requirement).

In sum, the Court finds that Defendant, through its conduct in this proceeding, has waived any right to demand arbitration. Accordingly, Defendant Cox Communications, Inc.'s Motion to Compel Arbitration of Absent Class Member Claims (Dkt. No. 144) is DENIED.

IT IS SO ORDERED this 18th day of July, 2014.

ROBIN J. CAUTHRON
United States District Judge