**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

IN RE:

**COX ENTERPRISES, INC.,
SET-TOP CABLE TELEVISION
BOX ANTITRUST LITIGATION**

**This document relates to:**

RICHARD HEALY,

       **Plaintiff,**

    v.

COX COMMUNICATIONS, INC.,

       **Defendant.**

**Case No. 12-ML-2048-C**

**COX COMMUNICATIONS, INC.'S MOTION FOR
JUDGMENT AS A MATTER OF LAW AND MEMORANDUM IN SUPPORT**

# <u>TABLE OF CONTENTS</u>

**Page**

I.     PLAINTIFFS HAVE NOT INTRODUCED ANY EVIDENCE THAT WOULD ALLOW THE JURY TO FIND FOR PLAINTIFFS ON THEIR TYING CLAIM ...................................................................................... 2

II.    COX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THIS CASE MUST BE PRESENTED TO THE JURY UNDER THE RULE OF REASON AND PLAINTIFFS HAVE NO EVIDENCE SUPPORTING A RULE OF REASON CLAIM .............................. 8

     A.    The Evidence Already Presented Requires A Rule Of Reason Instruction Because There Is No Substantial Potential For Impact On Competition .................................................................................... 8

     B.    Plaintiffs' Argument And Evidence About CableCARDs Triggered The Protections That Cox Is Entitled To Under The National Cooperative Research And Production Act, 15 U.S.C. § 4301 et seq. ....... 10

     C.    Plaintiffs Have No Evidence To Support A Rule Of Reason Claim........... 12

III.   PLAINTIFFS DO NOT PROVIDE SUFFICIENT EVIDENCE OF ANTITRUST INJURY OR DAMAGES TO PERMIT THE CLAIM TO REACH THE JURY ............................................................................... 13

     A.    Plaintiffs Offer No Evidence that Cox's Conduct Was the Cause of Antitrust Injury ............................................................................ 13

     B.    Plaintiffs Offer No Evidence Of The Price Of The Tied And Tying Package Absent The Alleged Anticompetitive Conduct............................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Allegheny Pepsi-Cola Bottling Co. v. Mid-Atlantic Coca-Cola Bottling Co.*,
690 F.2d 411 (4th Cir. 1982) ................................................................................................ 14

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ............................................................................................................. 13

*Atl. Richfield v. USA Petroleum, Co.*,
495 U.S. 328 (1990) ....................................................................................................... 13, 14

*Berkey Photo v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) ................................................................................................ 14

*Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.*,
441 U.S. 1 (1979) ................................................................................................................... 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ............................................................................................................. 14

*Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*,
315 F.3d 1271 (10th Cir. 2003) ....................................................................................... 1, 18

*Christy Sports, LLC v. Deer Valley Resort Co.*,
555 F.3d 1188 (10th Cir. 2009) ............................................................................................. 3

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ......................................................................................................... 14

*Elliott Indus. L.P. v. BP Am. Prod. Co.*,
407 F.3d 1091 (10th Cir. 2005) ........................................................................................... 13

*Fox Motors, Inc. v. Mazda Distribs. (Gulf) Inc.*,
806 F.2d 953 (10th Cir. 1986) ................................................................................... 4, 10, 13

*Freeland v. AT&T Corp.*,
238 F.R.D. 130 (S.D.N.Y. 2006) ................................................................................... 17, 18

*Full Draw Prods. v. Easton Sports, Inc.*,
182 F.3d 745 (10th Cir. 1999) ............................................................................................. 14

*Gregory v. Fort Bridger Rendezvous Ass'n*,
448 F.3d 1195 (10th Cir. 2006) ........................................................................................... 12

*Ill. Tool Works, Inc. v. Indep. Ink, Inc.*,
   547 U.S. 28 (2006) ................................................................................. 2, 8

*Jarrett v. Insight Communications Co.*,
   No. 09-CV-00093, 2014 U.S. Dist. LEXIS 103079 (W.D. Ky. July 14, 2014) .................. 2, 3

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) ....................................................................... *passim*

*Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*,
   677 F.2d 1045 (5th Cir. 1982) .................................................................. 16

*Konik v. Champlain Valley Physicians Hosp. Med. Ctr.*,
   733 F.2d 1007 (2d Cir. 1984) ................................................................... 3

*Kypta v. McDonald's Corp.*,
   671 F.2d 1282 (11th Cir. 1982) ............................................................. 15, 16

*L. Knife & Son, Inc. v. Banfi Prods. Corp.*,
   118 F.R.D. 269 (D. Mass. 1987) ............................................................... 17

*Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*,
   763 F.3d 1280 (11th Cir. 2014) ............................................................... 16

*Lantec, Inc. v. Novell, Inc.*,
   306 F.3d 1003 (10th Cir. 2002) ................................................................ 6

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
   532 F.3d 963 (9th Cir. 2008) .................................................................. 16

*Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*,
   No. 07-cv-5295, 2008 U.S. Dist. LEXIS 62181 (D.N.J. Aug. 12, 2008) ......................... 17

*Siegel v. Chicken Delight, Inc.*,
   448 F.2d 43 (9th Cir. 1971) ................................................................... 16

*United Farmers Agents Ass'n v. Farmers Ins. Exch.*,
   89 F.3d 233 (5th Cir. 1996) ................................................................... 16

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ........................................................................... 3

*Will v. Comprehensive Accounting Corp.*,
   776 F.2d 665 (7th Cir. 1985) .................................................................. 16

## STATUTES

15 U.S.C. § 4301 .................................................................................. 10

15 U.S.C. § 4302 .................................................................................................. 10, 12

**RULES**

Fed. R. Civ. P. 50 .................................................................................................. 1, 18

**TREATISES**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (4th ed. 2015) ................................................................... 18

Plaintiffs have had a full opportunity to present their case and to introduce all the evidence they had in support of their claims against Cox Communications, Inc. ("Cox"). It is now clear that Cox is entitled to judgment as a matter of law under Fed. R. Civ. P. 50.

Judgment as a matter of law is appropriate where "[t]here is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). In evaluating a Rule 50 motion, "[t]he question is not whether there is literally no evidence supporting the [non-moving] party . . . but whether there is evidence upon which the jury could properly find [for that party]." *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1278 (10th Cir. 2003) (quotation and citation omitted). This requires plaintiffs to come forward with "more than a 'mere scintilla' of evidence supporting [their] claim." *Id.* Applying that standard here, this Court must grant judgment as a matter of law in Cox's favor. Plaintiffs' complete failure to offer <u>any</u> evidence on multiple elements of their claim prevents a verdict in their favor.

First, plaintiffs failed to present evidence sufficient to get to a jury on at least three separate elements of their claim: (1) coercion, (2) substantial foreclosure of commerce and (3) market power. Second, the evidence introduced during plaintiffs' case in chief makes clear that their claim is not subject to the *per se* standard, but rather must be analyzed under the rule of reason. Not only have plaintiffs disavowed any rule of reason claim, they also offered no evidence on essential elements of a rule of reason claim, including whether there were any anticompetitive effects in the set-top box market and, if

so, that those effects outweighed the procompetitive benefits of Cox's conduct.  Finally,

plaintiffs did not offer sufficient evidence of antitrust injury, causation or damages.

## ARGUMENT

## I.  PLAINTIFFS HAVE NOT INTRODUCED ANY EVIDENCE THAT WOULD ALLOW THE JURY TO FIND FOR PLAINTIFFS ON THEIR TYING CLAIM

### A.  Plaintiffs Did Not Offer Evidence Sufficient To Get To The Jury On The Element Of Coercion

Plaintiffs did not introduce evidence sufficient to get to the jury on the issue of

coercion, *i.e.*, that Cox forced its subscribers to lease a set-top box in order to get the

tying product that plaintiffs call "Premium Cable."  *See Jefferson Parish Hosp. Dist. No.

2 v. Hyde*, 466 U.S. 2, 12 (1984), *abrogated on other grounds by Ill. Tool Works, Inc. v.

Indep. Ink, Inc*., 547 U.S. 28 (2006).

First, plaintiffs offered no evidence that Cox's conduct forced consumers to lease

a set-top box from Cox to get two-way services.  In fact, the evidence in the record is that

Cox told its subscribers that they could use retail two-way devices if the manufacturers of

those devices decided to sell them at retail.  The evidence in the record is also that Cox

took steps to assist manufacturers in making two-way devices available for sale at retail.

Second, where the tied product generally was not available for sale from another

firm through no fault of the defendant, there cannot be any coercion as a matter of law.

*See id.* at 16.  That was the holding of the court in *Jarrett v. Insight Communications Co.*,

No. 09-CV-00093, 2014 U.S. Dist. LEXIS 103079 (W.D. Ky. July 14, 2014), which

involved the same tying claim that plaintiffs make here against cable company Insight.

2

The court adopted the law of the Second Circuit and held that "[w]here decisions of third parties 'produce[] the practical effect' of limited consumer choices, that is 'legally insufficient' to establish coercion for a tying claim." *Id.* at *12-13 (quoting *Konik v. Champlain Valley Physicians Hosp. Med. Ctr.*, 733 F.2d 1007, 1018 (2d Cir. 1984)). The evidence in the record up to this point is that, although multiple consumer electronics companies made two-way set-top boxes that were fully compatible with Cox's system between 2005 and 2012, none of those companies sold those two-way set-top boxes at retail in that time period. That, frankly, has long been undisputed. The dispositive issue at this stage of the case is that plaintiffs offered no evidence that anything Cox did—or that Cox said on its website—is the reason why those manufactures decided not to sell at retail. Plaintiffs' unsubstantiated arguments during opening are not evidence, and not one witness testified (and no document even suggests) that anything <u>Cox</u> did or said is the reason why any set-top box manufacturer has chosen not to sell two-way set-top boxes at retail. In fact, all of the record evidence in the case up to this point is exactly the opposite—that Cox could not and did not control the go-to-market decisions of set-top box manufacturers.

Any evidence or argument that Cox did not do enough, or should have done more, to assist other companies in entering or creating a market for two-way set-top boxes cannot establish coercion as a matter of law. *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004); *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188 (10th Cir. 2009). Here, of course, none of the evidence in the record even remotely suggests that was the case. To the contrary, even at this stage, the record

3

is replete with evidence of Cox working hard to ensure that manufacturers could bring two-way retail devices to the retail market.

Because plaintiffs failed to offer any evidence sufficient to get to the jury on the issue of coercion, Cox is entitled to judgment as a matter of law.

**B.**  **Plaintiffs Did Not Offer Evidence Sufficient To Get To The Jury On The Element Of Substantial Foreclosure Of Commerce**

A separate and independent reason why Cox is entitled to judgment at this stage is because plaintiffs have not offered any evidence on the essential element of substantial foreclosure of commerce. Plaintiffs were required to offer evidence sufficient to get to the jury on whether "a substantial volume of commerce is foreclosed" to set-top box sellers by the alleged tie. *Jefferson Parish*, 466 U.S. at 16; *Fox Motors, Inc. v. Mazda Distribs. (Gulf) Inc.*, 806 F.2d 953, 957 (10th Cir. 1986) ("[A] tying arrangement must foreclose to competitors of the tied product a 'not insubstantial' volume of commerce.").

The substantial foreclosure element asks whether Cox's conduct actually *foreclosed* a substantial volume of sales of set-top boxes by others, that would have otherwise occurred. As the Supreme Court put it in *Jefferson Parish*,

> If only a single purchaser were 'forced' with respect to the purchase of a tied item, the resultant impact on competition would not be sufficient to warrant the concern of antitrust law. It is for this reason that we have refused to condemn tying arrangements unless a substantial volume of commerce is foreclosed thereby.

466 U.S. at 16. Thus here, the substantial foreclosure element required plaintiffs to offer sufficient evidence that, but for the alleged tie, a substantial volume of consumers *would* have purchased set-top boxes from another seller of them in the tied product market.

That in turn requires proof that, absent the alleged tie, some willing and able seller of two-way boxes would have sold them at retail in Oklahoma City because, otherwise, nothing that Cox did possibly could have "foreclosed" *any* volume of commerce to sellers or potential sellers in the set-top box market.  As *Jefferson Parish* clearly states, if a "purchaser is 'forced' to buy a product he would not have otherwise bought even from another seller in the tied-product market," then "no portion of the market which would otherwise have been available to other sellers has been foreclosed."  *Id.*  In fact, in that case the Supreme Court held that the plaintiffs had not proven a *per se* tying claim because there was no evidence that the defendant had forced any purchases of anesthesiological services that "would not otherwise [have been] made" from it and therefore the alleged tying arrangement could not "be said to have foreclosed a choice that would otherwise have been made 'on the merits.'"  *Id.* at 27-28; *id.* at 27 ("Tying arrangements need only be condemned if they restrain competition on the merits by forcing purchases that would not otherwise be made.").

Plaintiffs offered no evidence that Cox's alleged tie foreclosed *any* volume of commerce to other sellers in the set-top box market, much less *substantial* volume.  As set forth above, not one witness who testified or document that plaintiffs introduced said that anything Cox did is the reason why any manufacturer does not sell two-way set-top boxes at retail.  Again, all of the evidence in the record up to this point is that Cox has nothing to do with the go-to-market decisions of set-top box manufacturers.

Plaintiffs also completely failed to offer any evidence regarding the geographic scope of the tied product market.  Foreclosure must be analyzed in the relevant market for

the tied product. *See id.* at 12 (requiring a demonstration that "competition on the merits in the market for the tied item is restrained" in order to prove an unlawful tie). And it is hornbook antitrust law that "[i]n defining the relevant market, two aspects must be considered: the product market and the geographic market." *See, e.g.*, *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1024 (10th Cir. 2002). With no evidence whatsoever on what the relevant geographic market is for the tied product, plaintiffs cannot carry their burden of proving foreclosure.

### C.   Plaintiffs Did Not Offer Evidence Sufficient To Get To The Jury On The Element Of Market Power

Another independent ground to enter judgment for Cox is because plaintiffs did not offer evidence sufficient to get to the jury on the element of market power. Market power in a tying claim means something specific. It means that the seller must have sufficient power in the tying product to allow it to "impair competition on the merits" in the market for the tied product. *Jefferson Parish*, 466 U.S. at 14-15. Put another way, in a tying case, market power means "use of power over one product to attain power over another, or otherwise to distort freedom of trade and competition in the second product." *Id.* at 13 n.19. There are two separate reasons why plaintiffs' case-in-chief failed on the issue of market power.

First, plaintiffs did not introduce any evidence that Cox has market power in the portion of the tying product that they claim is the source of the alleged coercion: two-way services. Plaintiffs argue that the tying product is something that they call "Premium Cable," which they admit (and the evidence introduced so far proves) is a mixture of one-

way and two-way services.  Plaintiffs further admit (and the evidence so far proves) that Cox subscribers can get the one-way portion of "Premium Cable" without renting a set-top box from Cox.  Thus, in the framework of *Jefferson Parish*, plaintiffs are arguing that Cox uses its power over two-way services, not the whole of "Premium Cable," to force subscribers to lease a set-top box.  That means, as a starting point, that plaintiffs had to offer evidence that Cox had market power over two-way services before the jury could ever be permitted to decide whether Cox misused that power to force the lease of a set-top box.  Because plaintiffs offered no evidence that Cox has market power in two-way services, it cannot get to the jury on the element of market power.

Second, even assuming "Premium Cable" were a valid tying product, and even assuming that plaintiffs had offered sufficient evidence for the jury to conclude that Cox had market power in something called "Premium Cable," Cox would still be entitled to judgment as a matter of law on the market power element because plaintiffs completely ignore the other half of their burden of proof on this element.  Plaintiffs were required to offer evidence that Cox had sufficient market power in something called "Premium Cable" to allow it "impair competition on the merits" in the set-top box market.  *Jefferson Parish*, 466 U.S. at 14-15.  None of plaintiffs' evidence even touched on this aspect of the market power requirement, *i.e.*, whether any power Cox supposedly had over "Premium Cable" was sufficient to impair competition in the set-top box market. Plaintiffs offered no evidence that any power Cox supposedly had in "Premium Cable"—no matter how large—was sufficient for Cox to impair competition in the set-top box market.  Not one witness or document said that Cox's purported power over "Premium

Cable" is the reason that set-top box manufacturers do not sell two-way set-top boxes at retail.  Again, all of the evidence in the record at this stage is that Cox does not control the decisions of the companies that make set-top boxes, no matter how much power Cox supposedly has over "Premium Cable."

## II.   COX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THIS CASE MUST BE PRESENTED TO THE JURY UNDER THE RULE OF REASON AND PLAINTIFFS HAVE NO EVIDENCE SUPPORTING A RULE OF REASON CLAIM

### A.   The Evidence Already Presented Requires A Rule Of Reason Instruction Because There Is No Substantial Potential For Impact On Competition

The Supreme Court has cautioned courts not to apply the *per se* rule unless they are confident that the conduct at issue has "'no purpose except stifling of competition'" based on "considerable experience with the type of challenged restraint." *Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 20 & n.33 (1979) (citation omitted).  Many years ago, Supreme Court jurisprudence evidenced a "strong disapproval of tying arrangements" because it was *assumed* that they harmed competition and therefore were appropriate for *per se* treatment.  *Ill. Tool Works*, 547 U.S. at 34-35 (limiting the Court's own prior jurisprudence on the standards for judging a tying arrangement).   The Supreme Court has stated that its prior disapproval of tying arrangements has "substantially diminished" in recent years because, with the benefit of experience, it is now understood that "[m]any tying arrangements . . . are fully consistent with a free, competitive market."  *Id.* at 35, 45.  Today, only a very narrow category of tying arrangements justify *per se* treatment.  *Id.* at 45 (holding that tying arrangements

involving patented products no longer should be evaluated under the *per se* rule, even though they had been historically evaluated under that standard); *Jefferson Parish*, 466 U.S. at 9 (making clear that only "certain" tying arrangements are appropriate for *per se* treatment).  This case is not one of them.

"*Per se* condemnation—condemnation without inquiry into actual market conditions—is only appropriate if the existence of forcing is *probable*." *Jefferson Parish*, 466 U.S. at 15 (emphasis added).  A tying claim is not entitled to *per se* treatment unless "as a *threshold matter* there [is] a *substantial potential* for impact on competition." *Id.* at 16 (emphasis added). *Jefferson Parish* even spells out one example of a specific situation when *per se* treatment is *not* warranted:  "[W]hen a purchaser is 'forced' to buy a product he would not have otherwise bought even from another seller in the tied-product market, there can be no adverse impact on competition because no portion of the market which would otherwise have been available to other sellers has been foreclosed." *Id.*  This case presents almost that exact situation.[1]

The Tenth Circuit's ruling in *Fox Motors* demonstrates the cautious approach courts must apply in evaluating tying claims.   The Tenth Circuit held that it was

---

[1]     Although Cox has not yet had the opportunity to present its full case, there is already ample evidence in the record that there is no foreclosure of competition because Cox does not control the third party manufacturers who make set-top boxes and those companies have chosen for their own independent business reasons not to market these devices for sale at retail.  *See* 10/14/15 AM Tr. 84:17-85:12; 10/15/15 PM Tr. 49:21-50:4; *id.* at 56:9-16; *id.* at 57:4-58:18; *id.* at 81:20-82:3; *id.* at 83:12-84:2; 10/16/15 AM Tr. 17:8-14; 10/16/15 PM Tr. 40:9-11; *id.* at 41:1-5.  In addition, there is already evidence in the record that consumers are not interested in purchasing these devices at retail.  *See* DX-476; 10/16/15 AM Tr. 10:21-13:18.  Plaintiffs have not presented *any* evidence to the contrary.

reversible error for the district court to send that case to the jury with a *per se* instruction precisely because the evidence introduced at trial showed that the alleged tie "simply does not imply a sufficiently great likelihood of anticompetitive effect" in the tied product market. *Fox Motors*, 806 F.2d at 958.  Looking solely at the facts presented during plaintiffs' case in chief, it is clear that they do not demonstrate a "sufficiently great likelihood of anticompetitive effect" in the set-top box market, meaning that this Court cannot submit the case to the jury under a *per se* instruction. *Id.*  Plaintiffs have not identified a single seller who was foreclosed from the sale of set-top boxes, nor have they presented any evidence that any substantial number of Cox subscribers would have chosen to purchase a set-top box if they were available from a retail provider.  This failure of evidence prevents plaintiffs from receiving a *per se* instruction.

> **B.  Plaintiffs' Argument And Evidence About CableCARDs Triggered The Protections That Cox Is Entitled To Under The National Cooperative Research And Production Act, 15 U.S.C. § 4301 et seq.**

The NCRPA provides that "[i]n any action under the antitrust laws, or under State law similar to the antitrust laws, the conduct of . . . any person in making or performing a contract to carry out a joint venture . . . shall not be deemed illegal *per se*; such conduct shall be judged on the basis of its reasonableness."  15 U.S.C. § 4302.  A "joint venture" is further defined broadly and includes activities like "the production of a product, process or service," *id.* § 4301(a)(6)(D), and the "collection, exchange, and analysis of research or production information," *id.* § 4301(a)(6)(F).

The current record evidence is that CableLabs is a joint venture that engages in research and development activities for technology standards for the cable industry, and

that Cox has been a member of CableLabs since it was founded in the late 1980s. 10/15/15 PM Tr. 51:21-52:2; 61:5-14; 10/16/15 PM Tr. 6:2-10.  Thus, Cox is entitled to the protections of the statute if any conduct of CableLabs is part of plaintiffs' claim. Plaintiffs have put the conduct of CableLabs at issue in at least two ways during their case in chief.

First, plaintiffs argued that the design of the CableCARD was defectively limited and contributed to Cox's violation of the antitrust laws.  Plaintiffs repeatedly argued that there were "**problems**" with the CableCARD itself, making clear their contention those problems concerned its design parameters.   10/13/15 PM Tr. at 28:16-20.   In their opening, plaintiffs argued that "one *problem* with the CableCARDs are you had none of the two-way interactivity." *Id.* at 28:16-17 (emphasis added).  They also argued that "[a] second *problem* you had with CableCARDs is they lost content.  You didn't get all the 200 channels all the time." *Id.* at 28:18-19 (emphasis added).  They also argued that TiVo and Moxi devices suffered from the "all the *problems* of a CableCARD." *Id.* at 29:14-18 (emphasis added).  Plaintiffs' expert, Lawrence Harte, also told the jury that there were "problems" with the CableCARD itself.  10/15/15 AM Tr. 25:14-26:1.

Second, plaintiffs through their other expert, Justine Hastings, offered testimony that CableCARDs' alleged design limitations led to a reduction in consumer choice of set-top boxes.   For example, Dr. Hastings testified that alleged deficiencies in CableCARD functionality meant that alternative set-top box devices such as TiVo boxes were not meaningful competitive alternatives to a Cox set-top box.  10/20/15 AM Tr. 35:16-36:19.  That testimony could have no other conceivable relevance other than to

attempt to convince the jury that CableCARD-equipped devices provide no competitive constraints on Cox and thus enhance its alleged market power and its alleged ability to coerce consumers.

As the record proffered by the plaintiffs stands, the jury could conclude that plaintiffs are arguing that there are design limitations inherent in the design of the CableCARD and that the design limitations of the CableCARD contributed to Cox's alleged market power and its alleged ability to coerce consumers to rent set-top boxes from Cox.

The current record evidence establishes that CableLabs (with Cox's participation) developed the CableCARD technology. *E.g.*, 10/15/15 PM Tr. 60:16-21; 61:11-12. Thus, plaintiffs' arguments and "evidence" (such that it is) that there were "problems" with the CableCARD design indicts CableLabs' development activity. This means that, under the NCRPA, the jury cannot evaluate that conduct under a *per se* standard, but has to judge it under the rule of reason. 15 U.S.C. § 4302. As a contributing member of the joint venture, Cox is entitled to the benefits of the statute in that regard. *Id.*

### C.      Plaintiffs Have No Evidence To Support A Rule Of Reason Claim

Plaintiffs have offered no evidence to meet the elements of a rule of reason claim—in fact, plaintiffs have disavowed any rule of reason claim. In particular, plaintiffs have offered no evidence on the essential element of a rule of reason claim that required them to prove that anticompetitive effects outweigh any procompetitive justifications. *See Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1205 (10th Cir. 2006) (describing the burden shifting standard under the rule of reason). Because

plaintiffs are not entitled to have this case considered under a *per se* standard, and have failed to offer any proof on essential elements of a rule of reason claim, Cox is entitled to judgment as a matter of law. *Fox Motors*, 806 F.2d at 958-59 (reversing jury verdict and entering judgment for defendant on tying claim because plaintiff was not entitled to submit claim to jury under *per s*e standard and had not tried to prove a rule of reason claim).

## III. PLAINTIFFS DO NOT PROVIDE SUFFICIENT EVIDENCE OF ANTITRUST INJURY OR DAMAGES TO PERMIT THE CLAIM TO REACH THE JURY

### A. Plaintiffs Offer No Evidence that Cox's Conduct Was the Cause of Antitrust Injury

Plaintiffs have also failed to introduce evidence sufficient to get to the jury on the issue of antitrust injury. "The Sherman Act was designed to protect market participants from anticompetitive behavior in the marketplace. Thus, 'the antitrust injury requirement ensures that a **plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior**.'" *Elliott Indus. L.P. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1124-25 (10th Cir. 2005) (emphasis added) (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 530 (1983)); *see also Atl. Richfield v. USA Petroleum, Co.*, 495 U.S. 328, 334 (1990). To the extent that plaintiffs prove that Cox did anything improper, they must also produce proof that the improper conduct caused harm to competition in a relevant market which resulted in injury to plaintiffs.

Plaintiffs are only entitled to recover those damages they prove were caused by Cox's (alleged) anticompetitive behavior; both the fact of harm and that it was caused are requisite elements of antitrust injury. *Atl. Richfield Co.*, 495 U.S. at 334 ("A plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior."); *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 749 (10th Cir. 1999) ("The injury should reflect the anticompetitive effect . . . made possible by the violation." (*quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977))).

As a result, plaintiffs' only evidence of harm is insufficient to permit the case to get to the jury. Antitrust law squarely forbids any attempt to establish antitrust injury and resulting damages by simply comparing prevailing market price to a speculative market price in a hypothetical perfectly competitive market. *See, e.g.*, *Berkey Photo v. Eastman Kodak Co.*, 603 F.2d 263, 297-98 (2d Cir. 1979) (measure of damages is "the price increment caused by the anticompetitive conduct" rather than "the entire excess of the monopolist's price over that which would prevail in a competitive market"); *accord Allegheny Pepsi-Cola Bottling Co. v. Mid-Atlantic Coca-Cola Bottling Co.*, 690 F.2d 411, 415 (4th Cir. 1982). The Supreme Court recently reaffirmed this point and explained that failure to even distinguish between alleged theories of harm can be fatal to a damages model in an antitrust case. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (rejecting class certification because the damages "model failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised").

14

Plaintiffs here provide no evidence of harm that is causally linked to the alleged anticompetitive behavior and divorced from lawful conduct and market forces.  Plaintiffs' only offer of damages is derived from a comparison to an academic construct that makes no attempt to address causation nor isolate what harm, if any, arose from the alleged conduct as opposed to natural (and lawful) market forces.  In short, plaintiffs have failed to answer the fundamental question of antitrust injury:  if Cox had not done the alleged conduct, in the real world with all market forces and participants in play, would pricing for set-top boxes have been less?  Because plaintiffs have failed to offer any evidence on that issue, the case cannot get to the jury.

### B.   Plaintiffs Offer No Evidence Of The Price Of The Tied And Tying Package Absent The Alleged Anticompetitive Conduct

In a tying case, cognizable damages are the difference in the combined price of the tied and tying product package versus the price that package would have been absent the alleged anticompetitive conduct.  Here, that would be the difference, if any, between the combined price of Premium Cable and a set-top box rental in the real world as opposed to the price of those same bundled products in the but-for world in which Cox's alleged anticompetitive conduct did not occur.  This is referred to as the "package" price test.

As the Eleventh Circuit explained: "A determination of the value of the tied products alone would not indicate whether the plaintiff indeed suffered any net economic harm, since a lower price might conceivably have been exacted by the [seller] for the tying product."  *Kypta v. McDonald's Corp.*, 671 F.2d 1282, 1285 (11th Cir. 1982); *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, 763 F.3d 1280, 1284 n.3 (11th Cir.

15

2014) (Ebel, J., United States Circuit Judge for the Tenth Circuit, sitting by designation) ("The appropriate measure of damages in a tying case is the amount the purchaser overpaid *for the unlawfully tied bundle of products or services* when compared to the amount the purchaser would have paid to purchase those products or services separately." (emphasis added)).

The Seventh, Ninth and Fifth Circuits have also applied the package approach to assess any overcharge or injury in tying cases. *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 673 (7th Cir. 1985) ("[U]nless the plaintiff shows that the *package price was elevated* the suit must be dismissed without further ado." (emphasis added)); *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 52 (9th Cir. 1971) ("To ascertain whether an unlawful arrangement for the sale of products has caused injury to the purchaser, the *cost or value of the products involved*, free from the unlawful arrangement, must first be ascertained." (emphasis added)), *abrogated on other grounds as recognized by Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963 (9th Cir. 2008); *United Farmers Agents Ass'n v. Farmers Ins. Exch.*, 89 F.3d 233, 237 (5th Cir. 1996) ("[P]laintiffs offer no evidence of an appropriate market price for electronic access to policy information and have failed to even allege that *the tied bundle* of electronic access and computers cost more than the sum of their market prices." (emphasis added)).[2]

---

[2]    In its holding, the Fifth Circuit explicitly endorsed the package approach citing *Kypta*, 671 F.2d 1282, and *Will*, 776 F.2d 665, effectively overruling its prior reliance on the "tied product" approach in *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1054 (5th Cir. 1982).

16

District courts in the First, Second and Third Circuits have also held that the proper measure of recoverable antitrust injury for tying is the difference between the package price in the actual and but for worlds.  *L. Knife & Son, Inc. v. Banfi Prods. Corp.*, 118 F.R.D. 269, 271 (D. Mass. 1987) (applying package damages measure in ruling on discovery dispute); *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 149-50 (S.D.N.Y. 2006) (applying package approach to identify antitrust injury-in-fact in denial of class certification); *Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*, No. 07-cv-5295, 2008 U.S. Dist. LEXIS 62181, at *19 (D.N.J. Aug. 12, 2008) (dismissing Clayton Act claim "[b]ecause SMW has not pled [that the] arrangement has caused it to face a significant threat of paying more for [the products] as a bundle than it would pay for the products individually absent the tie, [and thus] SMW has failed to allege injury that may be redressed by its federal antitrust claims").

Historically, courts were split between the package approach described above and the so-called "tied-product" approach which focused only on the price of the tied product. *See, e.g.*, *Freeland*, 238 F.R.D. at 149-150.   However, the weight of authority has conclusively shifted to the package approach and for good reason.  The court in *Freeland* provided a helpful summary as to why:

> Because "the focus of 'antitrust injury' is on whether the challenged conduct has actually caused harm to the plaintiff," the package approach is more consistent with the antitrust injury requirement. Under the tied product method, a plaintiff is deemed injured, and may recover, to the extent that the price of the tied product has increased, regardless of whether that increase was completely offset, or even exceeded, by a reduction in price of the tying product. Yet such a consumer has suffered no economic harm as a result of the tying; any damages awarded to such a plaintiff are pure windfall.  This is a particularly valid concern in this case where it is

17

undisputed that the defendants each subsidize the price of handsets so that the price of handsets does not discourage consumers from becoming wireless customers.

To prevent recovery of windfall damages, "injury resulting from a tie-in must be shown by establishing that payments for both the tied and tying products exceeded their combined market value."

*Id.* at 150 (citations omitted).  A leading treatise in antitrust law, Areeda and Hovenkamp

concurs, labeling the position that plaintiffs assert here as "quite wrong":

[P]laintiff buyers [often] base their damage claims on proof that a tie forced them to buy the tied product from the defendant at higher prices than prevail in the tied market generally.  Some courts have awarded damages on this basis.

This is quite wrong, for in most cases a premium price on the tied product must be accompanied by a reduction in the price of the tying product.

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1769c (4th ed. 2015).

Plaintiffs' expert could not have been clearer that she offered no opinion as to the competitive price for the tying product.  10/20/15 PM Tr. 22:23-23:1.  Instead, her damages calculation considered <u>only</u> the change in the price of the tied product. 10/20/AM Tr. 78:23-79:12.  Plaintiffs have no other document, evidence, or opinion regarding the competitive price of the tying product or the package of tied and tying product.  Thus, plaintiffs failed to offer any evidence that the jury could use to calculate damages, and judgment as a matter of law is required.  *See Century 21 Real Estate*, 315 F.3d at 1278-80 (affirming the grant of a Rule 50 motion where plaintiff failed to offer proof of cognizable damages).

## CONCLUSION

For the foregoing reasons, Cox respectfully requests that this Court grant judgment as a matter of law in Cox's favor due to plaintiffs' failure to present sufficient evidence to sustain a verdict on multiple elements of their claim.

DATED: October 21, 2015        Respectfully submitted,

s/ Margaret M. Zwisler
Margaret M. Zwisler (pro hac vice)
Jennifer L. Giordano  (pro hac vice)
Allyson M. Maltas (pro hac vice)
Andrew J. Robinson (pro hac vice)
Katherine M. Cheng (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-1092
Facsimile: (202) 637-2201
margaret.zwisler@lw.com
jennifer.giordano@lw.com
allyson.maltas@lw.com
andrew.robinson@lw.com
katherine.cheng@lw.com

Alfred C. Pfeiffer, Jr. (pro hac vice)
Jason L. Daniels (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
alfred.pfeiffer@lw.com
jason.daniels@lw.com

Bruce D. Sokler (pro hac vice)
Robert G. Kidwell (pro hac vice)
Matthew A.R. Cohen (pro hac vice)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.

701 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Telephone: (202) 434-7303
Facsimile: (202) 434-7400
bdsokler@mintz.com
rgkidwell@mintz.com
mcohen@mintz.com

D. Kent Meyers, OBA #6168
Molly H. Tolbert, OBA #17353
CROWE & DUNLEVY, P.C.
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
Telephone: (405) 235-7729
Facsimile: (405) 272-5245
kent.meyers@crowedunlevy.com
molly.tolbert@crowedunlevy.com

*Counsel for Defendant Cox Communications, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on October 21, 2015, a true and correct copy of the foregoing Motion for Judgment as a Matter of Law was served on all counsel of record by the Court's electronic filing system (CM/ECF).

s/ Margaret M. Zwisler
Margaret M. Zwisler
Attorney for Defendant
Cox Communications, Inc.
LATHAM & WATKINS LLP
555 Eleventh St. NW
Suite 1000
Washington, DC 20004
Telephone: (202) 637-1092
Facsimile: (202) 637-2201
margaret.zwisler@lw.com
